**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| | : | |
| **v.** | : | **Crim No. 1:24-cr-130-CKK-1** |
| | : | |
| | : | |
| **SETH SARTY,** | : | |
| | : | |
| | : | |
| **Defendant.** | : | |

**UNITED STATES' OPPOSITION TO DEFENDANT SETH SARTY'S MOTION TO
AMEND CONDITIONS OF RELEASE**

Defendant Seth Sarty – facing eight federal charges for his participation in the January 6, 2021 attack on the Capitol – moves[1] to amend of a condition of his release that prohibits him from discussing this case with his co-defendant brother. ECF No. 15. The United States opposes this motion because the conditions of release are already the least restrictive combination of conditions, and because the condition ensures the safety of other persons and the community.

I.    **Factual History**

On January 6, 2021, Seth Sarty and his brother and co-defendant, Cepane Sarty, were at the forefront of the mob storming the Capitol. See ECF No. 1-1 (Statement of Facts). The brothers met in Baltimore, MD, where Sarty was living at the time, and traveled to Washington, D.C. with two other people. Once in Washington, D.C., the two brothers walked from the Ellipse to the U.S. Capitol where they and other rioters breached the Capitol grounds and broke into the Capitol building. The brothers entered the Capitol building at approximately 2:21 p.m. EST through the Senate Wing Door, minutes after it had first been breached.

---

[1] Sarty labels his filing as an "appeal of [the] magistrate court's order setting conditions of release." ECF No. 15. Under The Bail Reform Act, it is more appropriately a "motion for amendment of the conditions of release." 18 U.S.C. § 3145(a)(2). The United States will refer to it as such.



*Image 1: Screenshot from CCTV Camera showing Sarty (left) and Sarty's brother (right) entering the Capitol Building (both defendants highlighted in red oval).*

Sarty and his brother were part of the mob as it overran law enforcement officers in the Crypt. While moving through the halls of the Capitol building, the brothers remained side-by-side the entire time. As seen on CCTV footage from inside the Capitol, Sarty and his brother appeared to consult with each other on which path to take through the Capitol building.



*Image 2: Screenshot from CCTV Camera showing Sarty (right) as Sarty's brother (left) gestures towards an open office door (both defendants highlighted in red oval).*

After making their way through the Capitol building and briefly leaving the Capitol building through the East Rotunda Doors, Sarty and his brother re-entered the building through the same doors and entered the Capitol Rotunda. As law enforcement officers attempted to clear the Rotunda of rioters, Sarty and his brother made their way to the front of the line of officers, whereupon they linked arms and shoved the officers, temporarily driving the officers back.



*Image 3: Screenshot from Metropolitan Police body-worn camera showing Sarty (right) and Sarty's brother (left) linking arms (both defendants highlighted in red ovals).*

Police deployed a chemical riot control agent in the direction of Sarty and his brother; directly after the deployment of the chemical riot control agent, Sarty and his brother left the Rotunda. At approximately 3:13 p.m. EST, Sarty and his brother left the Capitol for the second and last time. In total, Sarty and his brother spent approximately 42 minutes inside the Capitol building.

For his conduct, Sarty was originally charged by complaint with one felony (a violation of 18 U.S.C. § 111(a)(1)) and six misdemeanors (violations of 18 U.S.C. §§ 1752(a)(1), (2), and (4) and 40 U.S.C. §§ 5104(e)(2)(D), (F), and (G)). ECF No. 1. On March 13, 2024, a grand jury

indicted Sarty on two felonies (violations of 18 U.S.C. § 231 and 18 U.S.C. § 111(a)(1)) and the six misdemeanors. ECF No. 20.

## II.   Procedural History

Sarty was arrested on February 5, 2024 in the Northern District of Georgia on a seven-count complaint originating in the District of Columbia. ECF Nos. 1, 5. At his initial appearance in this District on February 20, 2024, Magistrate Judge Zia M. Faruqui ordered Sarty released subject certain conditions, including that Sarty "not speak with co-defendant (brother) about the case outside the presence of attorney." ECF No. 12 at 2. Trial on all charges has not yet been set.

On March 4, 2024, Sarty appealed the Magistrate Court's Order setting conditions of his release. ECF No. 15. Sarty argues that the condition of his release prohibiting him from speaking to his brother about the case outside the presence of an attorney violates his First Amendment right to freedom of speech and familial association. *Id.* at 3. Sarty argues that this alleged limitation on his right to speech and association is not reasonably and necessarily related to legitimate and compelling government interests, namely assuring Sarty's appearance or the safety of the community. *Id.* at 3–4. Sarty argues that there are no allegations that he and his brother attempted to obstruct justice, destroy evidence, or collude in anyway. *Id.* at 4. Sarty argues that the condition is overly broad and unconstitutionally vague because prohibiting him from talking "about the case" could be interpreted to mean a prohibition on discussions about former president Donald J. Trump, the 2024 election, the events of January 6, 2021 as a whole, and other January 6-related cases, as well as the D.C. legal community and the legal process. *Id.* at 4–6. Sarty points to the absence of "specific findings" that the brothers "organized any violence or what occurred on January 6th" to support his claim that there is no connection between the condition and any legitimate government interests. *Id.* at 6. Finally, Sarty argues that the factors enumerated under Section 3142(g) of the Bail Reform Act do not support the conclusion that the condition is necessary to assure the

appearance of the defendant or the safety of the community. *Id.* at 6–7. Sarty argues that by restricting him from discussing this case with his brother, the condition restricts the very familial relations that prevent Sarty from being a flight risk in the first place. *Id.* at 7.

## III.    Legal Standard

Under the Bail Reform Act, if a judicial officer determines that release under two standard conditions (not committing crimes and cooperating in the collection of DNA) "will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community," the judicial officer may impose additional conditions. 18 U.S.C. §§ 3142(b), (c)(1). In that event, the judicial officer shall release the defendant "subject to the least restrictive further condition, or combination of conditions" that "reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(c)(1)(B). These conditions may include requiring that the person "abide by specified restrictions on personal associations," "avoid all contact with. . . a potential witness who may testify," or "satisfy any other condition that is reasonably necessary to . . . assure the safety of any other person and the community." 18 U.S.C. §§ 3142(c)(1)(B)(iv), (v), (xiv) (respectively).

In determining appropriate conditions of release, the judicial officer considers factors including: (1) "the nature and circumstances of the offense charged"; (2) "the weight of the evidence"; (3) "the history and characteristics" of the defendant and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the [defendant's] release." 18 U.S.C. § 3142(g) (the "Section 3142(g) factors"). The judicial officer may amend a release order "at any time." 18 U.S.C. § 3142(c)(3). The district court's review of a magistrate judge's order is *de novo*.[2] *United States v. Munchel*, 521 F. Supp. 3d 54, 60 (D.D.C. 2021) (Lamberth, J.).

---

[2] Sarty makes special note of the absence of individualized findings of his circumstances by the magistrate court. ECF No. 15 at 5–6. Because this Court reviews the issue *de novo*, unlike the

IV.    **Argument**

Sarty asks this Court to vacate the condition of release prohibiting him from discussing the case with his co-defendant brother outside the presence of an attorney. ECF No. 15. The United States opposes because Sarty is already subject to the "least restrictive" combination of conditions necessary to ensure the safety of the community (18 U.S.C. § 3142(c)(1)(B)).

"[M]ost conditions on pretrial release restrict the defendant's liberty in some respect and therefore implicate constitutional rights." *United States v. Kastner*, 2023 WL 4234657, at *6 (D.D.C. June 28, 2023) (CKK)); *see also United States v. Wendt*, 650 F. Supp.3d 672, 679, 681 (S.D. Iowa 2023) (finding that conditions of release, which "often impact constitutional rights," are nevertheless constitutional); *United States v. Murtari*, 2008 WL 687434, at *4 (S.D.N.Y. Mar. 1, 2008) (acknowledging that "a defendant who is under court supervision, including based upon a conditional pretrial release order, does not *necessarily* forfeit *all* of his or her First Amendment rights," but noting that some intrusion upon a defendant's constitutional rights may be necessary "in order to effectuate the objective of the Bail Reform Act." (emphasis added). However, restrictions on First Amendment rights are permitted so long as the restriction is "narrowly tailored to serve a compelling state interest." *Pursuing America's Greatness v. Fed. Election Com'n*, 831 F.3d 500, 508 (D.C. Cir. 2016).

As a preliminary matter, the parties agree that there is a compelling government interest in ensuring the defendant's appearance in court and ensuring the safety of the community during pre-trial proceedings. ECF No. 15 at 3 (*citing Oliver v. United States*, 682 A.2d 186, 190 (D.C. 1996)

---

standard in the cases that Sarty cites, the absence of specified findings by the magistrate court will be remedied by this Court's ruling on this motion and need not be addressed. *See United States v. McGeoch*, 546 F.App'x 44, 47 (2d Cir. 2013) (reviewing factual findings relating to a sentencing determination for clear error); *United States v. Wolf Child*, 699 F.3d 1082, 1089 (9th Cir. 2012) (reviewing conditions of supervised release for abuse of discretion).

in concluding that the government's interest in protecting the public from criminal activity and assuring the defendant's appearance in court is compelling). The only questions remaining, then, are (1) whether the condition is reasonably and necessarily related to the stated government interest, and (2) whether the condition is narrowly tailored or, as required by the Bail Reform Act, is the "least restrictive condition" available to satisfy the government's interests.

### a. *Limiting Discussions About the Case Absent the Presence of Counsel Is Appropriate*

The test for content-based restriction on a person's First Amendment rights is echoed in the language of the Bail Reform Act, which requires judges to examine whether the conditions of release are "the least restrictive further condition, or combination of conditions, that such judicial officer determines will reasonably assure the appearance of the person as required and the safety of any other person and the community" (18 U.S.C. § 3142(c)(1)(B)). Because the test found in the Bail Reform Act is identical to, if not more stringent than, strict scrutiny analysis, satisfying the Bail Reform Act analysis as laid out in Section 3142(c) and Section 3142(g) also establishes that a condition is appropriately tailored to the relevant government interests.

The Bail Reform Act explicitly grants courts the authority to restrict a defendant's personal associations, and to require "any other condition that is reasonably necessary . . . to assure the safety of any other person and the community." 18 U.S.C. §§ 3142(c)(1)(B)(iv), (xiv). Numerous courts in this District and around the country have implemented identical or even stricter conditions without any qualm or concern. *See, e.g., United States v. Huttle,* 22-cr-403 (D.D.C. Nov. 17, 2022) (Harvey, M.J.) (ECF No. 8 at 2) (prohibiting "contact with any co-defendant . . . without the presence of counsel"); *United States v. Chilcoat*, 22-cr-299 (D.D.C. Jan. 18, 2024) (CKK) (ECF No. 100 at 2; ECF No. 101 at 2) (ruling that "Defendant only needs to avoid contacting [co-defendant] to discuss this case. Defendant is permitted to discuss this case with [co-defendant] in the presence of counsel. All other non-case related contact permitted" in a case

brought against a married couple); *United States v. Martinez*, 2021 WL 4169789, at *1–3 (S.D. Iowa, Sept. 13, 2021) (noting that no-contact restrictions between co-defendants are consistent with 18 U.S.C. § 314(c)(1)(B)(v) and ordering a condition of release restricting communications about the case in question); *United States v. Calvin*, 2021 WL 3847807, at *1 (D. Nev. Aug. 27, 2021) (clarifying that married co-defendants "should avoid all contact directly or indirectly with co-defendant about the case, unless it is in the presence of counsel" so as to allow the co-defendants to share parental responsibilities). In fact, Sarty does not point to a single case in which a court has found that a condition of release similar or identical to the one at issue here was found to be unrelated to the government's interest or unconstitutionally vague or broad.

The Bail Reform Act lays out four factors for a court to consider when determining whether a condition of release is appropriate (the "Section 3142(g) factors"). 18 U.S.C. § 3142(g). These include: (1) the nature and circumstances of the offense, (2) the weight of the evidence against the defendant; (3) the history and characteristic of the defendant, and (4) the nature and seriousness of the danger to any person or the community. *Id.* Sarty focuses on a single factor, namely, his history and characteristics. ECF No. 15 at 6. However, all four Section 3142(g) factors support maintaining the condition as set by the magistrate court.

### i.   *Nature and Circumstances of the Offense*

Sarty argues that there are no allegations that he and his brother attempted to obstruct justice, destroy evidence, or collude in anyway. ECF No. 15 at 4. However, this argument ignores the very nature of the brothers' offenses. Sarty and his brother came to D.C. together with two other people to attend a rally at the Ellipse. Then, the brothers decided to leave their companions and go to the Capitol together. They entered the Capitol building together and, once inside the Capitol, the brothers walked side-by-side through the building. They exited and re-entered the Capitol building together. And when the brothers approached the police line in the Rotunda and

resisted the officers' efforts to clear the Capitol building, Sarty and his brother linked arms and resisted together. The nature and circumstances of the crime show that Sarty and his brother moved and acted in tandem; the conditions of release ensure that the brothers will not be able to collude, destroy evidence, or conspire to present false testimony in tandem, either.

      *ii.  Weight of the Evidence against Sarty*

The second of the Section 3142(g) factors looks at the weight of the evidence supporting the charge against the defendant.[3] *United States v. Cruz-Hernandez*, 422 F. Supp. 3d 157, 161 (D.D.C. 2019) (CKK). Even at this early stage, the weight of evidence supporting the charges against Sarty and his brother is strong, and clearly shows the joint nature of their actions. The joint entrance of both brothers into the Capitol building together and their movements throughout the Capitol building were captured on CCTV footage, and their assaultive actions, in which the brothers linked arms together and assaulted police officers, were captured on both CCTV footage and body worn camera footage.

Moreover, the evidence against Sarty and his brother will likely continue to get stronger. While review of Sarty's phone and computer, seized pursuant to a search warrant executed at the time of his arrest, is not complete, the United States believes that the review of Sarty's phone will yield further evidence that Sarty acted in tandem with his brother. The weight of the evidence therefore supports the charges against Sarty, and the joint nature of his actions with his brother.

---

[3] Sarty hints that this element runs afoul of the presumption of innocence inherent to our legal process. *See* ECF No. 15 at 4, *citing United States v. Scott*, 450 F.3d 863, 874 (9th Cir 2006) ("the assumption that [the defendant] was more likely to commit crimes than other members of the public, without an individualized determination to that effect is contradicted by the presumption of innocence."). However, numerous courts in this District have noted that "[e]xamining the weight of evidence as to guilt does not run afoul of due process." *United States v. Kent,* 496 F. Supp. 3d 500, 504–05 (D.D.C. 2020) (Faruqui, M.J.) (case collecting).

    *iii.*  <u>History and Characteristics of the Defendant</u>

Sarty argues that his ties to the community, including his employment and family ties, show that he is not a flight risk or a danger to others. ECF No. 5 at 7. However, this argument ignores the serious risk posed to the community that, if allowed to discuss the case, Sarty and his brother will work together to identify evidence to destroy, misleading testimony to present, or other ways to prevent the administration of justice. His family ties increase the risk that he and his brother pose to the community in this manner.

    *iv.*  <u>Nature and Seriousness of the Danger to Any Person or the Community</u>

Finally, Sarty's connection to his brother in this matter poses a danger to the American community in a more tangible sense. Sarty not only participated in a violent riot, but assaulted police officers during the rioters' final efforts to maintain control of the Capitol building. It is difficult to conceive of someone who poses a greater threat to the community than someone who would work with his brother to assault police officers to stop the peaceful transfer of power between presidential administrations.

The nature and circumstances of the offense, the weight of the evidence, the history and characteristics of Sarty and his relationship to his co-defendant, and the nature and seriousness of the danger that Sarty and his brother pose to the community all support the conclusion that the language of the condition of release is directly related to the compelling government interest of ensuring the safety of the community.

**b.  The Condition Is the Least Restrictive Necessary To Ensure the Safety of the Community**

Sarty argues that the condition is overly broad and unconstitutionally vague. ECF No. 15 at 4–6. The types of communications that Sarty argues could be restricted fall largely into two categories. Sarty argues that the condition could prevent him from discussing the D.C. legal

community and the legal process with his brother, including this Court, the jury, the prosecutor, and the defendants' own attorneys. ECF No. 15 at 5–6. Sarty also argues that the condition could prohibit him from talking about former President Trump, the 2024 presidential election, the events of January 6, 2021 generally, and other January 6-related cases. ECF No. 15 at 4–6. The former category is appropriately restricted but still permitted in the presence of counsel; the second category is not limited at all because it does not fall under the language of the condition of release.

### i.   _Discussions About the Case Are Permitted With the Presence of Counsel_

Sarty's argument that the condition of release is overly broad and unconstitutionally vague ignores the narrowing language built into the condition itself. Not only does the condition not cover all the topics of conversation that Sarty claims it does, but all discussion "about the case" with his brother are permitted, so long as the discussions take place in the presence of counsel. Sarty argues that the condition of release could include prohibiting Sarty and his brother from discussing "their judge, their prosecutor, D.C. juries or their general opinions about their respective attorneys" without their attorneys being present. ECF No. 15 at 5. However, all those topics necessarily involve discussions about legal arguments and theories, and therefore would most naturally come up in the presence of their respective counsel. _See e.g._, _United States v. Ballenger_, 640 F. Supp. 3d 34, 37–38 (D.D.C. 2022) (JEB) (in which a defendant raised an argument that an impartial jury cannot be empaneled in the District of Columbia); _United States v. Lee_, 21-cr-303, Aug. 14, 2023 Order (ECF No. 107) (ABJ) (in which a defendant raised a vindictive prosecution claim); _United States v. Miller_, 21-cr-119, Dec. 21, 2021 Order (ECF No. 67) (CJN) (in which a defendant raised a selective prosecution claim).

### ii.   _All Other Topics of Concern Are Not Covered By the Condition_

All other topics suggested by Sarty to be prohibited under the condition of release are not restricted by the condition because they are not related to "the case" before this Court. The test for

unconstitutional vagueness is whether the language "conveys sufficiently definite warnings as to the proscribed conduct when measured by common understanding and practices." *Ricks v. District of Columbia*, 414 F.2d 1097 (D.C. Cir. 1968). The language of the condition at issue, restricting discussions "about the case," satisfies this standard. The current presidential election cycle, the actions of former President Trump, the actions and statements of other political figures, the general events of January 6, and other January 6 cases (ECF No. 15 at 4–6) do not fall under the description of "the case." "The case," with its definitive article ("the") referring to a specific noun ("case"), is more appropriately understood to mean the specific case before this Court in which Sarty and his brother are co-defendants, including evidence in this case, motions filed in this case, orders issued by the Court in this case, legal theories and arguments presented in this case, and the proceedings in this case. Sarty's claim that the phrase "the case" applies to every January 6 case and the entire 2024 presidential election cycle is not the result of unconstitutional vagueness but rather of willful misinterpretation.

The cases Sarty cites either support this conclusion or are distinguishable.[4] In *United States v. Shrave*, the Seventh Circuit noted that the condition restricting association with any group or members of groups "espousing violence or" certain other beliefs could inadvertently restrict the defendant's right to associate with groups supporting legitimate violence, such as United States military action. 186 F.3d 839, 843 (7th Cir. 1999). However, the Seventh Circuit noted that such speculation was not necessary when the court "interpret[s] the restriction in light of the crime for which [the defendant] was charged and which necessitated the imposition of conditions of

---

[4] In *United States v. Hill*, a case examining conditions of supervised release, Judge Collyer of this District found that the condition requiring "no contact with children" provided no guidance about interactions with the defendant's own children and so was inappropriately vague. 959 F. Supp. 2d 158, 165 (D.D.C. 2013). By contrast, the language at issue here is very clear as to the specific person (Sarty's brother) and topic of conversation ("the case") to which the condition applies.

supervised release." *Id.* at 844; *see also LoFranco v. U.S. Parole Com'n*, 986 F. Supp. 796, 804–05 (S.D.N.Y. 1997) (finding that a condition prohibiting the individual from riding with "any other outlaw motorcycle gang" in a case examining conditions of parole was permissible because there was a "reasonable nexus between the special condition of release and the crime for which the individual was convicted."). "So understood, the condition provides sufficient notice of the conduct prohibited and hence is not unconstitutionally vague." *Shrave*, 186 F.3d at 844. Such is the case here: in light of the nature of the charges, in which Sarty and his brother acted in tandem, the condition is reasonably understood to be limited to the actions of Sarty and his brother on January 6, 2021 and the legal proceedings resulting from their actions, not nationally recognized political figures, other cases involving unrelated defendants, or an election cycle three years removed from the events at issue in this case.

### c.  The Condition of Release Protects the Defendants' Other Constitutional Interests

Finally, it is important to note that the condition of release at issue protects Sarty's own Sixth Amendment rights and honors the spirit of 18 U.S.C. § 3142(c)(1)(B)(v), prohibiting contact with "a potential witness who may testify concerning the offense." *See United States v. Martinez*, 2021 WL 4169789, at *1–3 (S.D. Iowa, Sept. 13, 2021) (noting that no-contact restrictions between co-defendants are consistent with 18 U.S.C. § 3142(c)(1)(B)(v)). Co-defendant cases can raise unique Sixth Amendment issues when they come into conflict with hearsay rules governing the admissibility of admissions or statements against interest. *See Bruton v. United States*, 39 U.S. 123, 126 (1968) (acknowledging that a co-defendant's incriminating extra-judicial statement could result in violations of the defendant's Sixth Amendment right to cross-examination).

In every co-defendant case there is the possibility that a defendant will choose to testify in his own defense, or that one defendant will begin to cooperate with the government and become a witness in the case. In order to comply with the statutory requirement that defendants not contact

any witness, even "potential" witnesses (18 U.S.C. § 3142(c)(1)(B)(v)), it is necessary to limit co-defendants' conversations about the case in the event that either defendant decide to testify. The condition that Sarty only talk "about the case" with his brother in the presence of counsel therefore provides additional protection for both defendants.

**V.       Conclusion**

The condition of release at issue is constructed to be the "least restrictive" (and therefore "narrowly tailored"), both by specifying that the only topics of conversation to be limited are those "about the case," but also by allowing those conversations to take place in the presence of counsel. It is reasonably and necessarily related to the government's interest in ensuring the safety of the community from the threat of obstruction of justice posed by co-defendants who may conspire to destroy evidence, the threat that either defendant will pressure the other as a potential witness in the case, and the threat that the brothers may join together to endanger the community of the District of Columbia, as they did on January 6, 2021. For these reasons, Sarty's motion to modify the conditions of his release should be denied.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar Number 481052

By:     */s/ Carolyn J. Jackson*
Carolyn J. Jackson
D.C. Bar No. 1644971
Assistant United States Attorney
601 D Street N.W.
Washington D.C. 20579
carolyn.jackson@usdoj.gov
(202) 252-7078