UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>SETH SARTY,<br><br>            Defendant. | Crim. Action No. 24-cr-130 (CKK) |

## REPLY TO THE GOVERNMENT'S OPPOSITION TO AMENDING SETH SARTY'S CONDITION OF RELEASE

Seth Sarty, through counsel, respectfully submits this reply to the government's memorandum in opposition. Gov't Opp., ECF No. 23.

The prosecution against him arises from the events of January 6th at the U.S. Capitol. The government has not articulated any specific basis or interest for such an order, nor has it specified to Mr. Sarty the exact substance about which he is prohibited from speaking. The order thus violates Mr. Sarty's freedom of speech and association and is vague and overly broad and not narrowly tailored to protect the safety of the community. In support of his Appeal, Mr. Sarty states the following.

First, Mr. Sarty ought not be restricted from discussing the case absent a specific justification with factual support. The government relies on multiple cases where the Court was justified in implementing a "no-contact" condition. Gov't Opp., ECF No. 23 at 7-8. The defense does not dispute that the Court has the authority to implement conditions like this when justified by the specific circumstances of the case. *See United States v. Lillemoe*, No. 3:15CR00025 (JCH), 2015 WL 9694385 (D.

Conn. May 28, 2015) (recognizing that under the Bail Reform Act, "the Court *may* direct the defendant to avoid contact with victims and potential witnesses," but noting "that [while] a co-defendant could eventually become a witness, there is a meaningful difference between third party witnesses and defendant witnesses in this context") (emphasis in original); *United States v. Martinez*, 2021 WL 4169789, at *1–3 (S.D. Iowa, Sept. 13, 2021) (explaining that "[a] no-contact restriction is clearly discretionary, however, and not mandatory"); *United States v. Hobbs*, 845 F.3d 365 (8th Cir. 2016) (recognizing the goals of protecting the public and reducing recidivism as potentially justifying restrictions in appropriate circumstances, but finding a no-contact restriction between married co-defendants not justified in this case). The issue here is that no specific circumstances of *this case* justify the condition or connect the condition to the government's interest. And although the government cites to cases where the condition was imposed absent defense objection, those cases were not litigated and thus fail to provide any analytical support.

The government argues that "the very nature of the brothers' offenses" justifies the condition. Gov't Opp., ECF No. 23 at 8. But the Sartys are not charged with obstruction of justice and there is no evidence that these particular defendants have engaged in any obstructive conduct since or even on January 6th. The idea that, because they went to the Capitol together, the brothers may "act[] in tandem" to collude or conspire is unwarranted speculation that could apply to every set of co-defendants in any case. Gov't Opp., ECF No. 23 at 8-9. The government fails to point to a single fact that demonstrates that Mr. Seth Sarty acted in any manner that would

give rise to particular concern of collusion, what that collusion would entail and how that collusion would affect the government's ability to protect the community. Thus, the government's claim that "if allowed to discuss the case, Sarty and his brother will work together" to post a "serious risk" to the community is conclusory. In short, the government asks the Court to find a *per se* rule for co-defendant cases, even though its "legitimate concern for protecting the community 'does not create a per se rule that this government interest always outweighs the constitutional right of liberty.'" *Lillemoe*, 2015 WL 9694385, at *3 (D. Conn. May 28, 2015) (quoting *United States v. Karper*, 847 F.Supp.2d 350, 359 (N.D.N.Y.2011)).

Allowing the brothers to discuss their case only in the presence of counsel limits these conversations to working hours and the availability of two very busy attorneys. It also unnecessarily burdens the brothers' relationship. The mere speculation that the brothers might collude or collaborate on their stories is unfounded and does not outweigh the hardship of the "no contact" condition. *See Lillemoe*, 2015 WL 9694385, at *3 (D. Conn. May 28, 2015) ("the mere worry that an indicted person may commit a crime, such as obstruction of justice or evidence tampering, is not sufficient to justify every restraint on that person"). And, of course, "[s]hould the government present evidence that [the brothers] are engaging in illegal activity, including obstruction of justice of evidence tampering, if the course of their contact with one another," there are mechanisms to punish such conduct, including revoking pretrial release and criminal prosecution. *Lillemoe*, 2015 WL 9694385, at *3. There has been no showing, in short, that Mr. Sarty and his brother have engaged

in illegal activity through their contact in the numerous years since January 6, nor that permitting Mr. Sarty and his brother to discuss their defense without the presence of counsel "will endanger the safety of any other person or the community." 18 U.S.C. § 3142(c)(1).

As to unconstitutionally broad and vague nature of the restriction, the government seeks to fit the brothers' potential discussions into two neat boxes: those about "the case," including potential legal theories and discussions about the legal process, and "other" topics, including the events of January 6 generally and other January 6-related cases. The government states that the former is prohibited, while the latter is not. ECF 23 at 11. That distinction does not stand up to even the barest scrutiny. Take, for example, two January 6 defendants whose defense is that they did not see the barricades that day, and accordingly lacked the necessary mens rea to trespass. Could they discuss that the barricades had been removed, a fact that goes both to a potential legal theory and the events of January 6 generally? Could they discuss the types of sentences this Court has given in like cases, a fact that goes both to the legal process and to unrelated January 6 cases? If their defense was that they were following the marching orders of then-President Trump, could they discuss the ongoing criminal prosecution of the former President in this district, a topic of both national importance and potential importance to their defense? This is not "willful misinterpretation," as the government puts it. These are just a few of the questions defendants facing this restriction might naturally ask themselves when

4

attempting to parse the distinction drawn by the government between "the case" and "other."

Finally, the government argues that maintaining this restriction protects Mr. Sarty's Sixth Amendment rights in the event one defendant choses to testify against the other. ECF 23 at 13-14. There is, however, "a meaningful difference between third party witnesses and defendant witnesses in this context." *Lillemoe*, 2015 WL 9694385, at *3. "The no-contact condition set forth in," 18 U.S.C. § 3142(c)(1)(B)(v), the statute cited by the government, "'seeks to prevent a defendant from intimidating someone who, by nature of being a victim or potential witness, is already in a difficult or delicate position.'" *Id.* (quoting *United States v. De Castro–Font*, 587 F.Supp.2d 364, 368 (D.P.R.2008)). That interest is not at issue where, as here, there is absolutely no basis for thinking that either will attempt to intimidate the other, and where "neither seeks the protection of the Court or the government from intimidation by the other." *Id.*

Respectfully Submitted,

A.J. KRAMER
FEDERAL PUBLIC DEFENDER

_____/s/_____
Eugene Ohm
Assistant Federal Public Defender
625 Indiana Ave., N.W.
Washington, D.C.  20004
(202) 208-7500

5